N EWMARKET IRON FOUNDRY *v.* HARVEY.

A charge in common form, "A. B., Dr. to C. D., To — lbs. castings, at — cts., $— —" imports goods sold and delivered.

A declaration upon such an account annexed will not be supported by proof of goods bargained and sold, or goods made to order and refused to be taken. If goods are made by one person for another, it is a good ground for refusal to accept them, that they are not made substantially according to the order, or if work be done upon them, which was not ordered. It is immaterial, whether such unauthorized work adds to the value of the articles or not.

A person, who refuses to receive articles made for him upon his order, but at the time assigns no reason for his refusal, will not be barred by his silence from availing himself of any legal defence to an action for not taking the goods.

ASSUMPSIT, on an account annexed to the writ, viz:
1847.

May 25. To 1,077 lbs. mill castings at 3¼ cts.,..$35.00
June 1. To 299 lbs. do., ..................... 9.72
                                                _____
                                                $44.72

Upon trial, upon the general issue, the plaintiffs introduced evidence tending to prove that the defendant ordered the castings in question at the plaintiffs' Foundry, to be taken by him at the Foundry, that they were cast by them agreeably to his directions, and he was notified to take them away but never did so.

The defendant's evidence tended to show that the order of the

defendant was for a casting of about 800 lbs. weight, and that the casting for which this suit is brought was much larger.

The evidence tended to show that the casting, when made, was sent without authority of the defendant, to a neighboring machine shop to be fitted, and, when that was done, remained at the machine shop, a short distance from the Foundry. There was no evidence that any order or consent was given by the defendant that the casting should be so fitted.

There was evidence on the part of the plaintiffs, tending to show that the agent of the plaintiffs showed the defendant the pattern they had, and explained to him how it could be cut out so as to reduce the weight about 150 lbs., that the defendant assented to their making the casting agreeably to that pattern and that it was so made, and that the defendant, when he was shown the casting, did not complain either of its weight or of its being so fitted, though he did not take it.

The court charged the jury that under the count in this case upon an account annexed, the plaintiff was bound to show a sale and delivery of the articles charged; that it was not enough to show a contract for the sale of goods, or that the articles were bargained and sold, or that they ordered to be made and then refused. But if the evidence satisfied them that the defendant ordered such a casting as the plaintiffs had made, to be taken by him at the Foundry, and it was made and kept at the Foundry ready for him to take when he chose to come for it, that was a sufficient delivery and made the sale complete; and in that case the plaintiffs were entitled to recover.

That if the plaintiffs without the order or consent of the defendant sent the casting to another shop, to have work done upon it not agreed for by the defendant, that was not in law a delivery, and the defendant would not be liable for the price in this action. That the defendant, if they believed his order was for the casting unfitted, was entitled to have the casting in the state in which the founder leaves it, was not bound to take it if the founder had caused or permitted it to be fitted without his order or consent, whether the work so done was injurious to the wheel or otherwise. That if he did not complain of the fitting,

that might be evidence of consent, but was not otherwise material. To these instructions the plaintiffs excepted.

They also excepted, " because the court omitted to charge the jury on this point; that any fitting of the wheel or any work done upon it without the defendant's order, which would authorize the defendant to refuse to receive it on that account, must be of a material character, and such as would injure it in some respect or render it less valuable for the defendant for the purposes for which he wanted it, and if they believed from the evidence that the fitting did not injure the wheel in any respect, but in fact made it better, the defendant could not refuse to receive it on that account and it was no defence to the action, though the defendant would not be bound to pay for the fitting or for any work done upon it, if done without his order."

And because the court declined to charge the jury, that if the defendant was informed at the time of the fitting of the wheel, and then made no objection to the fitting of it, and did not refuse to receive it on that account, he could not, after the action was brought, set up as a defence to the action, that it was fitted without his order, but he must be considered as having waived any objections on that account.

The jury found a verdict for the defendant, and the plaintiffs move that it may be set aside and a new trial granted, by reason of the said exceptions.

*Stickney & Tuck*, for the plaintiffs.

The first exception we propose to consider is to that part of the charge, which says, " that under the count, in this case, upon an account annexed, the plaintiffs were bound to show a sale and delivery of the articles charged ; that it was not enough to show a contract for the sale of goods ; or that the articles were bargained and sold, or that they were ordered to be made and then refused."

The position we take is, that an action upon an account annexed, in the common form, may be maintained for articles bargained and sold, and for articles made for the defendant as well as for articles sold and delivered to him.

It is believed to be well settled, that when a sale of personal chattels is agreed on and the bargain struck, the property passes to the vendee without delivery; a bargain and sale of chattels, without delivery, changes the property, so that from that time, the chattels are at the risk of the purchaser, and if destroyed before delivery, the purchaser must bear the loss. 2 Black. Com. 448; *Wing* v. *Clark,* 11 Shep., 366; *Ricker* v. *Cross,* 5 N. H. Rep., 570; Chit. Con., 375.

Indebitatus assumpsit will lie for goods bargained and sold, and it would seem to be the proper action, when a purchaser refused to receive the goods purchased, and when the goods are destroyed after the sale and before the delivery. 1 Ch. Pl., 339; 2 Ch. Pl., 52; Steph. N. P., 278. Indebitatus assumpsit will also lie for labor performed and articles furnished under a special contract. *Mitchell* v. *Gile,* 12 N. H. Rep., 390; *Cummings* v. *Nichols,* 13 N. H. Rep., 427. The practice of declaring upon an account annexed has long prevailed in this State and in Massachusetts. *Rider* v. *Robins,* 13 Mass., 284; *Hilton* v. *Burley,* 2 N. H. Rep., 193. This is the most general common count in use. It is not usual nor necessary to state in the account or in the writ, that the goods were sold and delivered, or that the labor was done, or the money paid for the defendant at his request. The usual form of the account is, for example: To 1 yd. of cloth, $1.00; To 1 day's labor, $1.00; To cash, $10.00; To cash paid A. B., $10.00. The declaration alleges, that the defendant, being indebted to the plaintiff according to the account annexed, in consideration thereof promised.

In the other common counts, it is usual and necessary to allege, that the goods were sold and delivered by the plaintiff to the defendant: that the labor was done, and the money paid by the plaintiff for the defendant, at his request; those allegations are used in all the precedents, and are laid down as necessary in the books upon pleading. In our count upon an account annexed, they are not used. It is not stated whether the articles named in the account, were sold and delivered, or bargained and sold, or made for the defendant, nor that the labor was done, or the money paid for him at his request. It is necessary to prove

on trial, that the articles were sold and delivered, *or* bargained and sold, *or* made for the defendant; and that the labor was done, and the money paid for the defendant at his request, and such proof would support the count upon an account annexed. It would seem to be no more necessary to allege that the goods were bargained and sold to or made for the defendant, than it is that they were sold and delivered to him. When the action is for goods sold and delivered to the defendant, and it is stated in the account annexed, simply: To 1 yd. of cloth, $1.00, it means to 1 yd. of cloth sold and delivered, and the words, " sold and delivered by the plaintiff to the defendant" are understood or supplied. And we can see no reason, why the words " bargained and sold by the plaintiff to the defendant ;" or " made by plaintiff for defendant " may not just as well be understood or supplied, when the facts are so. In the present case, the charge is "May 28, To 1077 lbs. mill castings, at 3¼ cts., $35.00; June 1, To 299 do., $9.72." If the castings were sold and delivered, that is admitted to be a good form of declaring, the words " sold and delivered" are understood or supplied, and it is just the same as if the account had been " To 1077 lbs. mill castings sold and delivered by the plaintiff to the defendant, at his request." Why may not the words " bargained and sold to the defendant" or " made by the plaintiff for the defendant at his request," be just as well understood or supplied, if the castings in fact were bargained and sold or were made for the defendant, upon his order? The plaintiffs, in this case, carried on the iron foundry business. It was their business to make castings for people, who applied, and to keep castings ready made, for sale; the defendant applied to them for work in their line; he must therefore be presumed to know their business. When they charged him with 1077 lbs. of castings, it must be understood to mean castings made for him; and it is difficult to understand, why the words " made for him" may not be just as well supplied as the words " sold and delivered to him."

What we contend is, that the words " sold and delivered," " bargained and sold," and " made for the defendant," may be

supplied as the facts require. If there was a sale, and delivery, the effect is the same in this general form, as if the account had been " To 1077 lbs. castings sold and delivered to the defendant." So if there was a bargain and sale of the castings, it is just the same now, as if the account had read " To 1077 lbs. castings bargained and sold by the plaintiffs to the defendant at his request ;" and if the castings were ordered by the defendant and made by the plaintiffs for him, it is just the same now, as if the account annexed had read " To 1077 lbs. castings made by the .plaintiffs for the defendant at his request." Suppose that the account annexed had read " To 1077 lbs· castings bargained and sold by the plaintiffs to the defendant at his request," would it not be enough for the plaintiffs to show, that the castings were bargained and sold to the defendant; or suppose that the account read, " To 1077 lbs. castings made by the plaintiffs for the defendant at his request," would it not be enough for the plaintiffs to show, that they made the castings for the defendant according to his order ? We think it clear, that it would be enough, and we contend, that it is just the same in effect now, as if those words had been stated in the account annexed.

In *Bassett* v. *Spofford*, 11 N. H. Rep., 167, the charge in the account annexed was " To visit and· medicine ,34," and it was held to be sufficient. There it was just the same, as if the account had been, " To visit made to him," or " to making him a visit." So in this case, it is just the same as if the account had read, " To castings made for him," or what is equivalent, " To making castings for him."

In *Stevens* v. *Thompson*, decided at the December term, 1846, in Rockingham county, there was but one count in the writ, namely, upon the account annexed. Some of the items in the account were as follows :

To 20 days work on the barn on the Bennett place,.. $10.00
" paid Wm. Stetson for work on same place thirty-
        four days,.............................17.00
" cash lent,...................................10.00
" use of one-third Bennett place for the years 1835,
        36 and 37, at $17.55 per year,.............52.65

It was objected, that the plaintiff could not recover for those items upon that declaration, but the court overruled the objection and the plaintiff recovered.

We contend, therefore, that where the account annexed is simply for goods, as in this case, the plaintiff is entitled to recover if he prove, either that the goods were sold and delivered, or were bargained and sold to the defendant, or were made for him at his request.

The next exception relates to that part of the charge which relates to the fitting of the castings, as stated in the second paragraph of the charge in the case. This we contend is erroneous. The agreement between the parties was this : The plaintiffs at the request of the defendant agreed to make certain castings for the defendant, according to his directions, and the defendant agreed to take them and pay for them. Now when the plaintiffs made the castings according to the defendant's directions, and notified him of it, they had performed their part of the agreement ; the contract was executed on their part, and a debt had accrued to them for the castings, which they were entitled to recover on the general counts. If the plaintiffs, after this, without the defendant's order or consent, did other work upon the castings, or caused or permitted it to be done, that could not take away their right to recover for what they had done according to their agreement. This subsequent work was a separate matter, and took place after the agreement had been executed on their part, and their right of action had accrued. When the castings were made according to order, and the defendant was notified of it, the castings then belonged to him, and the plaintiffs were entitled to recover for them. If the subsequent work materially injured the castings, we should not contend that the defendant was bound to take them; but if the castings were not thereby injured, but were in fact made better, it would seem to be unreasonable and unjust to allow the defendant to refuse to take them, merely because the plaintiffs had permitted work to be done upon them, which was clearly beneficial, and which was necessary to be done, before they could be used at all. It may be said on the other side, that the defend-

ant was not bound to take the castings, unless he could have them as he ordered them. The general doctrine no doubt is, that if a man orders an article made for him, he is not bound to take it unless it is made according to his order; but that contract, like all others, is to receive a reasonable construction. If the article is made substantially according to order, it cannot be refused for any trifling difference, which does not injure or affect its utility at all. It is a maxim " *de minimis non curat lex*," and this maxim applies to contracts of this kind. If, when made, the article is substantially what is ordered, and will answer the purposes intended, the person ordering it is bound to take it. If something more is done to it than was ordered, which evidently improves it, he could not refuse it on that account, because he gets what he ordered, and something more with it, without any addition to the price. That was the construction put upon a contract of a similar nature in some respects, in *Robinson* v. *Crowninshield*, 1 N. H. Rep., 76. The doctrine there laid down was, that if the plaintiffs proved that they had substantially performed the contract on their part, they were entitled to recover, and not otherwise. Whether the article is substantially according to the agreement or order, or not, is a question of fact for the jury, and not matter of law for the court. So whether any work afterwards done upon it changed it materially, or made it different from what was ordered, is equally a question of fact for the jury, and not for the court. The plaintiffs in this case made certain castings for the defendant upon his order, and notified him that they were made and ready for him. The question was, whether the castings thus made and tendered were substantially what the defendant had ordered. Whether they were or not, was a question of fact for the jury. The plaintiffs had a right to contend before the jury, that the castings which they had made and tendered to him, were such as he had ordered, and that nothing had been done to them, since they left the founder, which injured them in any respect, or changed them, or made them different from what he had ordered, and if they could satisfy the jury of that, they were entitled to recover. But the court did not leave it to the

jury to decide, whether the castings thus made and tendered were substantially such as the defendant had ordered, nor whether the subsequent work done upon them changed them materially, or made them different from what he had ordered, but charged the jury that the defendant was entitled to castings, as the founder left them; and if the plaintiffs had permitted the castings to be fitted, or any work to be done upon them, without the defendant's order or consent, the defendant was not bound to take them, whether the work thus done was injurious or otherwise. The reason or justice of such law is not easily perceived. In order to justify the defendant in refusing to take the castings, it should appear, as we think, that the castings made and tendered, were not such as he had ordered — either that they were not made originally as he had ordered, or that they were changed afterwards, so that when tendered, they were not such as were ordered, and whether they were so or not, should be left to the jury. The 1077 lbs. castings charged in the account were a balance wheel for a saw mill. The fitting done to it was the fitting of some wrought iron into the centre of the wheel to fit it for use. It could not be used at all without the fitting. The wheel itself was not altered at all. It may be said, this does not appear from the case. It is immaterial whether it appears or not, because from the charge of the judge it was wholly immaterial whether the work done to it, was beneficial or not. Admitting that it was as stated above, that only some iron was put into the wheel, so that it could be used, yet there was some work done upon it and the castings would not be in the condition in which the founder left them; and consequently, according to the charge, the defendant was not bound to take them. The plaintiffs had nothing to do with the fitting; it was done at the machine shop near by, and the plaintiffs claim no pay for the fitting. The plaintiffs tendered to the defendant the identical castings, which they had made for him, according to his order. The castings were unchanged. There was the fitting in addition. The plaintiffs did not tell the defendant, that he could not have the castings, unless he paid for the fitting, but they tendered the whole. If the fitting was done without his order, he

was not obliged to pay for it. Now we contend, that the defendant could not refuse to take the castings, merely because they were fitted, without showing that the fitting was some damage or inconvenience to him. The plaintiffs had offered to him, what he ordered, and as he ordered, and something more in addition, without any addition to the price. If he had objected to the fitting, that could have been removed, and he could have had the castings without the fitting. It cannot be objected, that the castings were at the machine shop, when the agreement was that the defendant should take them at the foundry. The meaning of that was, that the plaintiffs were not to send the castings to the defendant; but he was to take them at the foundry, and if they had them at their foundry, or near by, it was sufficient. Suppose the plaintiffs had removed them a few rods from the foundry to have them out of the way, that certainly would not give him a right to refuse to take them on that account. The plaintiffs were not obliged to keep the castings in their foundry, but if they had them near their foundry, within a reasonable distance, so that the defendant could take them as easily as at the foundry, that would be sufficient. It does not appear, that it was not as convenient for the defendant to take them at the shop as at the foundry. The defendant made no objection to that place ; if he had objected on that account, the plaintiffs could have moved them back to the foundry. The fair construction to be put upon the agreement is, that the plaintiffs were to have the castings at their foundry, or near by, within a reasonable distance, where the defendant could take them as conveniently as at the foundry. The law, as stated in the charge, appears to us unreasonable, especially when carried out in practice. A party may in good faith make an article better or do some more work than he agreed, which he believes would make it better, and which does make it better, yet, according to the charge, the party ordering might refuse to take it, on that account. Suppose a man builds a carriage or ship in all respects as ordered, and in addition does something more, which actually improves it. Could the party ordering, refuse to take it on that account? We think not, and certainly he could not, if, as in

this case, the addition could be removed if objected to. If he could refuse it for this reason, he could upon the same principle, refuse to take a pair of boots made for him according to his order, because the shoemaker had blacked them without his order ; or if he had ordered a pair of shoes, and the shoemaker had made them according to order, and put some strings in them, which were not ordered, he could refuse them on that account. The strings are no more necessary for the shoes, than the fittings for the castings, nor so much so, because the wheel could not be used at all without the fittings.

The next and last exception we take, is, because the court declined to instruct the jury as requested. The position we take upon that point is, that the defendant being shown the castings with the fittings in them, and making no objection to them, on that account, he thereby assented to the fitting. An assent may be given after as well as before the fitting is done. If he had assented to the fitting before it was done, he was bound by it, and could not afterwards object to them on that account. And we contend, that if he assented to it, after it was done, he is equally bound by it. And this assent may be inferred or implied from what he says and does. The court say, that his making no objection to the fitting may be evidence of his consent: that he consented beforehand, that the fitting should be done ; but we say that it is evidence further, and that is, that he assented to it after it was done, and thereby waived any objections on that account, and if he did he is bound by it. This assent may be inferred or implied from his making no objection to it, when the castings with the fittings in them were shown to him ; and the court should have so charged the jury. An express assent afterwards, we suppose, would bind the defendant ; and if the jury believed from what he said and did, that he did assent to it he is equally bound by it. The reason and propriety of this is seen when we consider, that if the defendant had objected to the fittings, they could have been removed, and the castings without the fittings delivered to him.

*McMurphy* for the defendant.

BELL, J.   By ancient usage, the declaration upon an account annexed, has been sanctioned in this State, as it has been in Massachusetts; *Hilton* v. *Burley*, 2 N. H. Rep., 193; *Rider* v. *Robbins*, 13 Mass., 284, and the account annexed to the writ is allowed to supply the want of proper allegations in the body of the declaration.   The account, when so annexed, is to be read and understood, as it would be if separate; and the question here is, what is in fact the meaning of a charge in an account of the form of this: A. B., Dr. to C. D., To—lbs. of castings at — cts., $——.   It seems to us, that it is always understood to mean goods *sold and delivered*.   By usage, which is the only law of speech, it might have meant *goods lent*, or *goods contracted to be sold*, or *goods made to order*, but we are not aware that there is any such usage.   We understand, that, by usage, the words supposed to be omitted are " *sold and delivered* by the plaintiff to the defendant."   " To—lbs. mill castings sold and delivered, &c., at—cts. per lb., $——."   The design of a declaration is to make known to the party and to the court, the claim made by the plaintiff; and to that claim and no other, the defendant is required to answer.   The question is, then, not how the count might be construed, but how, according to the common use of the words, it would usually and naturally be understood.   It is urged, that the words *bargained and sold*, or *made* by the plaintiff for the defendant at his request, may just as well be supplied, as *sold and delivered*, but the court would not suffer either to be supplied.

The want of a statement of the consideration of a promise is a capital defect in a declaration, not to be supplied by intendment, but by an amendment; and the count upon an account annexed is holden to be good and sufficient, because by long usage the necessary words are understood; and our understanding is, that by that usage the words implied are " sold and delivered."   It cannot be held, that any words may be implied which the plaintiffs case may be found to require, because if the declaration were expressed in the alternative, it would be bad: and it could not be better, if such alternative was implied. The question is not, what this form of declaration might be un-

derstood to mean, but what it has been understood to mean, according to the general usage and understanding; and we have not understood that it has been considered applicable to any other cases than those of sales.

The court charged the jury, that the defendant, if his order was for a casting merely, that is, unfitted, was entitled to have the casting in the state in which the founder leaves it; and was not bound to take, it, if the founder had caused, or permitted it to be fitted, without his order or consent; whether the work so done was injurious to it or not; and objection is taken in the argument chiefly because of the last clause. It is admitted, that the general principle is, that when a man orders an article made for him, he is not bound to take it, unless it is made according to his order, but it is said, if the article is made substantially according to the order, it cannot be refused for any trifling difference, which does not injure it, or affect its utility. It does not appear from the case, nor is to be fairly inferred, that the fitting which was objected to, was of such a trifling character as to come within the rule cited by the counsel, " *de minimis non curat lex.*" The casting was sent to a machine shop to be *fitted;* and though the precise character of the work done does not appear by the case, there is no pretence, that it was regarded as *trivial.* The plaintiffs' counsel, in his argument, admits their materiality, when he says, that without the fittings the wheel could not be used at all. What qualifications of the instructions, it might have been proper for the judge to have made, if it had appeared, or had been suggested, that the fittings were wholly immaterial and unimportant, is not material to be considered. As a disputed matter of fact it might have been properly left to the jury. The rules laid down by the court for the guidance of the jury are not either expected, or required to contain the limitations and qualifications, which would apply or .be required in every supposable case. It is enough, if they are stated with such qualifications, as the case in question calls for. A verdict will not be set aside for any error in the charge, unless it relates to a matter material in the case on trial. The charge was not that any work done to the casting without orders

would be enough to release the party who ordered it, but the charge was confined to the case before the court, " if the founder caused or permitted it *to be fitted* without his order or consent." This, as indeed the whole case, shows that the fitting was a material and important matter. And in that view the charge was equivalent to saying, that if the article was made in any material respect contrary to the order, the party was not bound to take it; and this we conceive to be the true doctrine of the law on the subject. That the question of the materiality of any thing done without or contrary to order, is a question for the jury, is too clear for discussion, if any such question arises in a case; but it is very apparent, that no question of that kind arose or was discussed, otherwise the evidence would have shown what was the amount and character of the work, called *fitting.* The question really in controversy, is shown by the instruction asked for by the plaintiffs, and the refusal of which is the last ground of exception. They asked the court, to charge, that any fitting of the wheel, or any work done upon it, without the defendant's order, which would entitle him to refuse to receive it on that account, must be of a material character, and such as would injure it in some respect, or render it less valuable for the defendant, for the purposes for which he wanted it; and if the jury believed from the evidence, that the fitting did not injure the wheel, but in fact made it better, the defendant could not refuse to receive it, on that account. This shows, that the question involved, was not whether the unordered work was immaterial, but whether the casting could be refused, when the work done without orders *did not injure the wheel, but in fact made it better,* If the work was so trifling as to be immaterial, " *de minimis,*" this question could not arise. The great question of the case was involved in this desired instruction. Was the defendant bound to take an article, he had ordered, if it was not made agreeably to his orders, if the jury think, that the deviation from the orders did not injure the article, but in fact made it better? If the rule contended for by the plaintiff exists, its application cannot be brought in question now for the first time; and we might reasonably expect the plaintiffs coun-

sel to point to the case where any such principle is recognized; but none such is cited. It would establish the rule, that the choice of the kind and quality of an article ordered to be made rests with the workman who makes it, and not with the person who orders it, provided the article is not injured, but is in fact made better. A man would have no right to object to a brown coat, when he orders a black, if the brown coat is the better article; nor to its being trimmed with gold lace, if it did not injure the coat, but in the opinion of the jury, in fact made it better. To state such a result is all that can be required to show the principle to be unsound. Every man has the right to choose his own workman, and to make his own bargains, and we can easily imagine, that a man building a saw mill in the country, should have good reasons to prefer the plain but strong work of his neighboring blacksmith, to the more accurate and nice and perhaps highly polished work and corresponding price of the machine shop; and it would seem to be a good reason to refuse to take an article ordered in its rough state, if it was finished by some one without his orders, with whom he might have a controversy as to the pay for the work, if he then accepted the article, though such finishing might add to its value.

The last exception raises the question, how far a man is estopped to rely on an objection at the trial, which he had not previously urged. The article was in this case shown to the defendant, and he did not take it, but he did not assign his reasons for not taking it.

It is contended, he cannot now insist that it was fitted without his order. It is said, the fittings, if objected to, might have been removed, like the strings from a pair of shoes, but the case does not show that such was the character of the work called fittings, neither did the exception rest on any such ground. As the case shows, the fittings were work done to the casting itself. And it seems now for the first time suggested, that if the defendants objection had been known, the fittings might have been removed, and the article would then have been as he ordered it.

It is a legal no less than an equitable principle, that he who is

silent when he ought to speak, shall not be heard to speak, when he ought to be silent.

The cases to which this principle applies are those where persons are led by the silence of others, to do what they would not have done, if they had known the facts. 1 Story Eq., 375; *Runlet* v. *Otis*, 2 N. H. Rep., 167; *State* v. *Dwinnell*, 6 N. H. Rep., 167; *Morse* v. *Child*, 6 N. H. Rep., 521; *Exeter Bank* v. *Gordon*, 8 N. H. Rep., 79; *Eaton* v. *Rice*, 8. N. H. Rep., 376; *Clement* v. *Clement*, 8 N. H. Rep., 472; *Marston* v. *Brackett*, 9 N. H. Rep., 336; *Thompson* v. *Sanborn*, 11 N. H. Rep., 201; *Marshall* v. *Pierce*, 12 N. H. Rep., 127; *Wood* v. *Fletcher*, 3 N. H. Rep., 61; *Tufts* v. *Hayes*, 5 N. H. Rep., 542; *Davis* v. *Sanders*, 11 N. H. Rep., 259; *Sanborn* v. *Little*, 3 N. H. Rep., 539; *King* v. *Fowler*, 16 Mass., 397.

Here nothing was to be done on the part of the plaintiffs. Nothing was done. The whole matter was past. The plaintiffs were not misled by defendant's silence, to do otherwise than they would have done, if the defendant's objections had been stated. And we are aware of no principle on which the defendant can be barred of any of his grounds of defence, because he did not then insist upon them. We are of the opinion, that the objections must be overruled.

*Judgment on the Verdict.*